## ELIZABETH KLUDZINSKI v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 2, 1915.

Nos. 19,264—(183).

**Death by wrongful act — circumstantial evidence.**

1. Action for death by wrongful act. Plaintiff's intestate met death while in the employ of defendant in its switch yard. His last place of work was at one of the switches in the yard. No occasion is shown that would call him elsewhere. His body was found near this switch. His overshoe was found caught between the switch bar and a tie, with some circumstances indicating that his foot had been drawn from it and then crushed. In such a case circumstantial evidence as to the cause of the injury is sufficient if it furnishes a reasonable basis for the jury to infer that some

[1] Reported in 153 N. W. 529.

---

Note.—For cases passing upon recovery for death, alleged to have been caused by negligence, on circumstantial evidence, see note in 2 L.R.A.(N.S.) 905. And for cases passing upon discharge of burden of proof as to contributory negligence, see note in 33 L.R.A.(N.S.) 1138, 1177.

Generally as to duty to maintain lookout for persons on track, see note in 25 L.R.A. 287.

wrongful act of defendant was the cause. The evidence is sufficient to support an inference that deceased was killed at this switch.

**Locomotive engineer — duty to use reasonable care.**

2. The engineer in a switching yard where men are constantly working upon the tracks owes a duty to keep a lookout for them. His duty is that of reasonable care. The evidence is such that a jury might well find that the engineer did not exercise such care.

Action in the district court for St. Louis county by the administratrix of the estate of Anton Kludzinski, deceased, to recover $10,000 for the death of her intestate, while in the employ of defendant. The case was tried before Cant, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $2,000. Defendant's motion for judgment notwithstanding the verdict was denied and its motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $1,200. From the judgment entered pursuant to the verdict as reduced, defendant appealed. Affirmed.

*Baldwin, Baldwin & Holmes* and *M. L. Countryman,* for appellant.

*Walter Gonska, Warner E. Whipple* and *Frank E. Randall,* for respondent.

HALLAM, J.

1. On January 14, 1913, Frank Kludzinski was killed while in the employ of the defendant in its Superior yard. No one saw the accident. It was conceded, however, that he was run over by a switch engine of defendant which was engaged in switching cars about the yard. Deceased was ordered, a short time before his death, to clean the snow from a switch known as switch number 11. When last seen alive he was still working at this switch. This was about five or ten minutes before his body was discovered. It is not clear from the testimony whether he had finished this work or not. One of plaintiff's witnesses testified that when he arrived after the accident the switch had been cleaned out. One of defendant's witnesses, the foreman of the section, testified that he left deceased at this work about 20 minutes before he heard of the accident, that when he left

him there was not much done, and when he came back after the accident "there was some work done." The body of deceased was found at this switch and between the tracks. His tools lay on the ground near by. The body was badly mutilated. A pool of blood lay near by. A left-foot overshoe worn by deceased was found, torn and wedged in between the switch bar and the tie. The left foot was found crushed to a pulp, and there was ground for an inference that the foot could not have been so crushed while in the overshoe and that the shoe was torn in the process of pulling the foot from it.

The burden of proof is upon the plaintiff to prove that some negligent act of defendant caused the death of deceased. It is not incumbent on the defendant to show how the accident happened. If the cause of its happening is not established, the defendant is entitled to prevail. The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility of injury from defendant's acts. It must be more than merely consistent with plaintiff's theory of how the accident occurred. Yet the causal connection between the negligent act of defendant and the injury to plaintiff need not be proved by direct evidence. The evidence may be circumstantial, and circumstantial evidence is sufficient if it furnishes a reasonable basis for the jury to infer that some negligent act of the defendant was the cause of the injury. Lewis v. Chicago G. W. R. Co. 124 Minn. 487, 145 N. W. 393; and cases cited.

The contention of plaintiff is that, while deceased was engaged at his work of cleaning this switch, the engine approached, that his foot became caught between the switch bar and the tie in the place where his overshoe was found, and that he was unable to extricate himself in time to escape being run over by the approaching engine. We think the evidence is such as to fairly sustain this theory of the case. The work in which deceased was last engaged at switch number 11, the absence of any occasion shown for his being on the track elsewhere, the wedged-in overshoe, the position of the body and the pool of blood near by, all point strongly to the conclusion that here was the place where deceased was first struck by the engine, and that the catching of his left foot between the switch bar and the

tie compelled him to remain in a position where he could not avoid the approaching engine.

In fact were it not for one bit of troublesome testimony we should find little occasion to doubt the correctness of this theory. The testimony to which we refer is as follows:

Two of plaintiff's witnesses expressed the opinion that the body had been dragged for about 100 feet between the switch and what is called the "viaduct." The switch engine had traversed this course back and forth. Plaintiff's case rests on the theory that defendant was first struck by the engine at switch number 11, and inasmuch as his body was found at switch number 11, it follows that, if it had been dragged over the space between the switch and the viaduct at all, it must have been dragged from the switch to the viaduct and back, and this was the opinion of these witnesses. This conclusion is their inference from the presence of spots of blood over this portion of the track and the appearance of something having been drawn or brushed over the snow that lay on the ground. From the facts spread upon the record we are not impressed with the conclusiveness of the opinion that deceased was dragged at all. Defendant's witnesses do not appear to have entertained any such theory. The most that any of them said when questioned on this subject is found in the testimony of the yard foreman that "there was a little blood; not much to be seen, though." However, this theory was advanced as an opinion by plaintiff's witnesses, and it appears to have been entertained by plaintiff, and we are not disposed to repudiate it. But we cannot see that it greatly benefits the defendant. Defendant urges that if the body was dragged over the space between the switch and the viaduct it is more reasonable to believe that deceased had been killed at the viaduct and dragged only one way, than to believe that he was dragged from the switch to the viaduct and back, and it urges that a theory that deceased could have been dragged to the viaduct and then back and dropped at the precise point where he was first struck, is so inherently improbable that it is incapable of belief. Such a coincidence must indeed have been a strange one. But the theory that deceased was killed at the viaduct and dragged from there to the switch presents even greater difficulties. If he was

130 M.—15.

killed at the viaduct it was a still more strange coincidence that his body should have been dropped just at his last place of work and where his tools lay, and that his overshoe, torn from his foot, should in some inscrutable manner be deposited and wedged into the position where it was found. It appears to us that no advantage can accrue to defendant from the troublesome opinion of these witnesses that the body of deceased had been dragged after he was struck by the engine.

We are of the opinion that the evidence fairly sustains the claim that deceased was struck by the engine while he was at switch number 11 in the course of his duty.

2. The next question is, was the act of defendant in running over deceased negligent. The negligence charged is the omission to keep a proper lookout so as to avoid injuring persons working on the track. The evidence on this subject is sufficient to justify a finding of negligence in this particular. Men were constantly at work on these tracks. The engineer owed a duty to keep a proper lookout for them. Erickson v. St. Paul & D. R. Co. 41 Minn. 500, 43 N. W. 332, 5 L.R.A. 786; Britton v. Northern Pac. Ry. Co. 47 Minn. 340, 50 N. W. 231; Schulz v. Chicago, M. & St. P. Ry. Co. 57 Minn. 271, 59 N. W. 192. He was under instructions to give them warning when he saw them. Their safety was quite as important as the dispatch of the business of the switching yard. He could not devote his whole time to their protection, for he had other work to do, and they must be expected to exercise care for their own safety. But it was his duty to exercise such reasonable care as a person of ordinary prudence would, under the same conditions, considering on the one hand the dangers to the men in working on the track, and on the other hand his other necessary duties as engineer. The jury might well find that the engineer did not exercise such care. He testified at one point that he was giving his "undivided attention" to the signals of the switch foreman, and at another point that when he was backing up he "paid no attention to what is going on ahead." He did not in fact see deceased upon the track at all, and did not see his body upon the track until he was signaled to stop. We think the evidence of negligence sufficient.

Judgment affirmed.