TURK and another, Plaintiffs and Appellants, v. H. C. PRANGE COMPANY, Defendant and Respondent: OTIS ELEVATOR COMPANY, Interpleaded Defendant and Respondent.*

*October 1, 1962, January 9, 1963—February 5, 1963.*

* Motion for rehearing denied, with $25 costs, on April 2, 1963.

548

For the appellants there were briefs and oral argument by *Dudley O. Emmert* of Manitowoc.

For the respondent H. C. Prange Company there was a brief by *Gruhle, Fessler, Wissbroecker & Van de Water* of Sheboygan, and oral argument by *Douglas K. Van de Water* and *Jacob A. Fessler.*

For the respondent Otis Elevator Company there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Donald R. Peterson* and *Donald L. Johnson* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

WILKIE, J. 1. *Plaintiffs' counsel's opening statement.* The first issue raised on this appeal is whether the trial court committed prejudicial error against the plaintiffs in ruling counsel's opening statement, that this was a *res ipsa loquitur* case, improper, and in denying plaintiffs' motion for a mistrial based on said ruling.

During his opening statement to the jury the plaintiffs' attorney attempted to enlighten the jury on the effect of the *res ipsa loquitur* doctrine. He made it clear that he was going to rely heavily on the doctrine in presenting his case. The trial judge stopped him and told him not to proceed on that doctrine until the court ruled that the doctrine applied. The plaintiffs contend that this was prejudicial error. At the time, counsel made a motion for a mistrial on the grounds of prejudice since the jury heard the court's reprimand of the plaintiffs' theory of law. This motion was denied by the trial court. There is no doubt that a trial judge can stop an attorney from proceeding during his opening statement on a theory of law until such time as the judge determines that the theory is applicable to the case being tried. Sec. 274.37, Stats.; *Grace v. Dempsey* (1889), 75 Wis. 313, 43 N. W. 1127; 4 Callaghan's, Bryant, Wisconsin Pleading and Practice (3d ed.), pp. 411–414, secs. 33.35, 33.36; 3 Am. Jur., Appeal and Error, p. 534, sec. 973.

"An appellate court will not disturb the exercise by the trial court of its discretion as to the arguments and conduct

of counsel unless there has been an abuse of discretion." 5A C. J. S., Appeal & Error, p. 113, sec. 1611.

Clearly there was no abuse of discretion when the trial judge could not tell before the proof was presented whether or not the doctrine of *res ipsa loquitur* was applicable.

2. *The applicability of the doctrine of res ipsa loquitur.* The second and most-important issue raised on this appeal is whether the trial court committed prejudicial error against the plaintiffs in failing to instruct the jury that this was a *res ipsa loquitur* case and the effects thereof.

There is no doubt but what the trial court decided this was not a *res ipsa loquitur* case. Instructions on the doctrine as requested by the plaintiffs were denied. Although the trial court submitted the case to the jury on a possible safe-place violation and on common-law negligence, he did not give to the plaintiffs the benefit of the doctrine of *res ipsa loquitur*.

As to the escalator, plaintiffs' evidence was, in substance, that John's galosh was caught in the center of the escalator and it could not have been caught there, where the last tread of the escalator met the comb at the base, unless the tread and comb were negligently out of adjustment so that there would be a gap which would cause the galosh to be caught. Defendant's evidence was to the effect that the tread and comb were in proper adjustment at the time of the accident, and that the boy's galosh was actually caught in the curtain on the extreme right-hand side of the escalator, where the galosh could become caught even though the escalator was in perfect adjustment.

Although in discussing proposed instructions and the Otis motion for a nonsuit of Prange's cross complaint against Otis the trial court expressed an opinion that the plaintiffs' evidence raised an inference of negligence on the part of Prange, and that the effect of the doctrine of *res ipsa loquitur* in this state is that of a permissible inference, no instruction to that effect was given to the jury.

This was prejudicial to the plaintiffs. With the benefit of a proper instruction the jury could well have answered differently and found Prange negligent either under common law or in violating the safe-place statute. Because of the prejudicial error, plaintiffs should receive a new trial. This was a proper case for the doctrine of *res ipsa loquitur* to apply and for the plaintiffs to receive the benefits of that doctrine.

The three elements of *res ipsa loquitur,* as defined in *Ryan v. Zweck-Wollenberg Co.* (1954), 266 Wis. 630, 64 N. W. (2d) 226, that must be present before the application of the doctrine, are: (1) The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. *Colla v. Mandella* (1955), 271 Wis. 145, 72 N. W. (2d) 755; *Arledge v. Scherer Freight Lines* (1955), 269 Wis. 142, 68 N. W. (2d) 821; Prosser, Law of Torts (2d ed.), p. 201, sec. 42; 39 Marquette Law Review (1956), 361; Anno. 66 A. L. R. (2d) 507.

First Element: *Accident does not occur in absence of negligence.* The respondent claims that since all the facts and circumstances in the case are known and presented, the appellants cannot proceed under *res ipsa loquitur, i.e.,* where the appellants claim or present proof of specific elements of negligence, *res ipsa loquitur* fails. However, in Wisconsin, specific elements of negligence can be alleged or supported in evidence without destroying the doctrine. In *Brunner v. Van Hoof* (1958), 4 Wis. (2d) 459, 90 N. W. (2d) 551, the court said, at page 464:

"When specific acts of negligence are shown making a *primà facie* case by the plaintiff and the inference of negli-

gence is met and overcome by the evidence on the part of the defendant the doctrine of *res ipsa loquitur* is not applicable. *Gay v. Milwaukee E. R. & L. Co.* (1909), 138 Wis. 348, 120 N. W. 283."

Respondent claims:

. "It [the doctrine] does not apply where an unexplained accident may be attributable to one of several causes, for some of which the defendant is not responsible. It should not be allowed to apply where, on proof of the occurrence, without more, the matter still rests on conjecture alone or the accident is just as reasonably attributable to other causes as to negligence."

This is a correct statement of the law, but it does not govern the instant case.

Respondent cites *Klein v. Beeten* (1919), 169 Wis. 385, 172 N. W. 736, as authority for its contention. However, in that case the court did not allow the plaintiff to proceed under *res ipsa loquitur* because if it had, the verdict of the jury might be a result of conjecture and guesswork. In that case the plaintiff's son was killed as a result of riding in defendant's truck. The truck left the highway, turned over, and pinned the son against the ground. Testimony showed that the left front tire was deflated. Therefore the cause of the accident could have been the defendant's negligence in the operation of his vehicle (an actionable cause), or the result of an unforeseen blowout (a nonactionable cause). A jury verdict cannot stand upon conjecture and therefore *res ipsa loquitur* was correctly ruled not to have applied in that case. As stated in the case of *Hyer v. Janesville* (1898), 101 Wis. 371, 377, 77 N. W. 729:

". . . where there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it may be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that foundation for a verdict."

In the instant case the respondent contends that one can get his galosh caught without negligence on the part of the defendant, such as John did, by riding in the wrong position on the escalator and therefore this would create two possible causes, one actionable and one nonactionable.

The plaintiffs' proof gave rise to an inference of negligence on the part of Prange; the defendant's proof was only in explanation of the accident and not such as to remove every inference of possible negligence. In such a situation the doctrine of *res ipsa loquitur* applies and plaintiffs are entitled to an instruction on it. In *Koehler v. Thiensville State Bank* (1944), 245 Wis. 281, 14 N. W. (2d) 15, at page 288:

"Of necessity, the inferences of negligence arising in cases of *res ipsa loquitur* are of varying strengths and so are the proofs adduced to meet these inferences. In a great many cases involving the existence of defective construction or maintenance in machines, for example, it is possible to meet the inference of negligence with refutation so conclusive as to leave not a scintilla of the inference, and in such a case there is no issue for the jury. On the other hand, if the counterproof is of a character that need not be treated as a verity, the inference persists and a jury, as in the *Lipsky Case, supra* [*Lipsky v. C. Reiss Coal Co.* (1908), 136 Wis. 307, 117 N. W. 803], may still be permitted to weigh the inference against the so-called rebutting testimony. That this is the scope of the rule is indicated by the following statement in the *Lipsky Case* (p. 312):

" 'The inference of negligence which in a proper case may be drawn from the accident itself is one of fact, and the authority of the jury to decide whether it should be drawn can be excluded only in presence of undisputed proof, not merely testimony, that such negligence did not occur.' "

In *Wood v. Indemnity Ins. Co.* (1956), 273 Wis. 93, 76 N. W. (2d) 610, it was held, at page 102:

"We are constrained to hold that in a situation where it ordinarily would be permissible to invoke the rule of *res*

*ipsa loquitur,* such as the unexplained departure from the traveled portion of the highway by a motor vehicle, resort to such rule is not rendered improper merely by the introduction of inconclusive evidence giving rise to an inference that such departure may have been due to something other than the negligence of the operator."

The mere introduction of defendant's evidence that the galosh was caught on the right-hand curtain does not render it improper to invoke the rule of *res ipsa loquitur.*

A comprehensive analysis of cases throughout the country and dealing with the liability of a department store for a defective escalator is contained in Anno. 66 A. L. R. (2d) 507, and the courts (cited in this annotation) applied *res ipsa loquitur* to several of the factual situations there considered. The doctrine applied in *Welch v. Rollman & Sons Co.* (1942), 70 Ohio App. 515, 25 Ohio Op. 310, 36 Ohio L. Abs. 610, 44 N. E. (2d) 726, wherein plaintiff lost his balance from a sudden jerk of the escalator. The doctrine applied in *J. C. Penney Co. v. Livingston* (Ky. 1954), 271 S. W. (2d) 906, wherein a twenty-two-months-old child caught his hand in the step behind him. In *Hesemann v. May Dept. Stores Co.* (1931), 225 Mo. App. 584, 39 S. W. (2d) 797, the doctrine applied where plaintiff fell when the escalator jerked; and in *Lee v. Pennsylvania R. Co.* (2d Cir. 1951), 192 Fed. (2d) 226, the doctrine applied when a child caught his fingers in the comb of the escalator. Also see *Ross v. Bloomingdale Brothers* (1953), 205 Misc. 104, 127 N. Y. Supp. (2d) 81.

In the cases where *res ipsa loquitur* did not apply, the plaintiff was found to have lost his balance without anything being caught in the escalator, or to have fallen due to a slippery surface, see Anno. 66 A. L. R. (2d) 510–513. The respondent quotes *Arbuckle v. Stewart Dry Goods Co.* (Ky. 1956), 291 S. W. (2d) 525, as authority for his position. However, in that case the plaintiff lost her balance and there was no testimony that the escalator was defective.

The plaintiffs were entitled to an instruction on the doctrine of *res ipsa loquitur,* as per that set forth in Wis J I— Civil, Part I, 1145, to wit:

"If you find that the defendant had exclusive control of the [escalator] involved in the accident, and if you further find that the accident claimed is of a type or kind that ordinarily would not have occurred had the defendant exercised ordinary care, then you may infer from the accident itself and the surrounding circumstances that there was negligence on the part of the defendant, unless the defendant has offered an explanation of the accident which is satisfactory to you."

The lack of this instruction was prejudicial to plaintiff although a jury does not have to accept the permissible inference of *res ipsa loquitur. Mayer v. Boynton Cab Co.* (1954), 267 Wis. 486, 66 N. W. (2d) 136; *Colla v. Mandella, supra; Hasselman v. Zimmerman* (1957), 2 Wis. (2d) 345, 86 N. W. (2d) 418.

Second Element: *Defendant must have exclusive control.* One of the elements of *res ipsa loquitur* demands that the defendant have exclusive control over the instrumentality. Defendant argues that it did not have exclusive control but that by virtue of its contract with the interpleaded defendant, it was the interpleaded defendant who had the exclusive control. *Koehler v. Thiensville State Bank, supra,* established the Wisconsin rule that *right to control* is the important factor and actual exclusive control is not necessary. The respondent had such right to control in the case at bar.[1]

Third Element: *Absence of contributory negligence by plaintiff.* Mrs. Turk's cause of action is based upon the fact

---

[1] As stated in 39 Marquette Law Review (1956), 361, 370: "It is apparent that in all of the foregoing cases the concept of possession appears to be an element of the control necessary for the application of the doctrine, *i.e.,* possession of the instrumentality that caused the accident. The courts do not mean that there must be an actual physical possession of the particular thing that is involved but merely *a right* of control . . ."

that she was injured as a result of the defendant's negligent act, maintaining a defective escalator. She fell while trying to extricate-her son whose galosh was caught at the base of the escalator. If the defendant were found negligent, Mrs. Turk's injury would be a "natural consequence" of the defendant's negligence. Foreseeability is an element in determining whether an act was negligent, but once it is found to be negligent, foreseeability is not an element in determining the substantial cause of an injury. *Pfeifer v. Standard Gateway Theater* (1952), 262 Wis. 229, 55 N. W. (2d) 29.

Whether Mrs. Turk was contributorily negligent is a jury question. Even though the jury in the instant case found Mrs. Turk to have been contributorily negligent, the case must be sent back since the proper question is whether she was contributorily negligent in the light of *res ipsa loquitur.* In both the *Ryan Case, supra,* and in *Arledge v. Scherer Freight Lines, supra,* this court has prescribed the three necessary element of *res ipsa loquitur.* In both cases one of the elements called for is that the person invoking the doctrine could not have contributed to the accident, *i.e.,* that the plaintiff was not contributorily negligent. However, in view of Wisconsin's comparative-negligence statute, sec. 331.045, it is more logical to hold that in Wisconsin contributory negligence on the part of Mrs. Turk should not be an absolute bar to her reliance on *res ipsa loquitur.*[2]

We therefore hold that this third element of freedom from contributory negligence is not a requirement for the appli-

---

[2] Professor James D. Ghiardi has so concluded in his analysis of the doctrine in Wisconsin in 39 Marquette Law Review (1956), 361, 374: "In Wisconsin there are then but two elements in the doctrine: (1) An accident that would not occur in the absence of negligence; (2) the cause of the accident was an agency or instrumentality within the exclusive control of the defendant. The recent cases indicate that contributory negligence will not bar application of the doctrine unless the percentage is as great as the defendant's." Professor Richard V. Campbell concurs in 1955 Wisconsin Law Review, 5, 13.

cation of *res ipsa loquitur* and that if the defendant is found negligent, plaintiff's contributory negligence, if any, goes to the question of comparison of negligence as between the plaintiff and the defendant.

Since the essential elements for *res ipsa loquitur* were present, the trial court committed prejudicial error in denying plaintiffs an instruction on it.

3. *Instruction on knowledge of any defect in the escalator.* The third issue on this appeal is whether the trial court committed prejudicial error against the plaintiffs in instructing the jury that if there was any defect under the safe-place law that was chargeable to Prange, Prange would first have to have knowledge of such defect.

Plaintiffs contend that the trial court committed prejudicial error in his instructions requiring Prange to have knowledge of the defect in the escalator from which it could be inferred the accident occurred.

The plaintiffs argue that a defendant does not have to have notice of an unsafe condition if the unsafe condition was created by the defendant himself. *Kosnar v. J. C. Penney Co.* (1959), 6 Wis. (2d) 238, 94 N. W. (2d) 642. However, even though a defendant will be held liable for a violation of the safe-place statute, without any notice either actual or constructive of a defect which he himself created, this is not applicable to the instant case. There was testimony here that Prange had a contract with Otis to maintain and adjust the escalator in the store. There was also evidence that inspections of the escalator were made by Otis and the last one was made about a week prior to the accident. The mere fact that the escalator was out of adjustment would not mean that the owner of it created the maladjustment so as to hold him liable under the rule of the *Kosnar Case, supra.* The *Kosnar Case* encompasses active negligence on the part of a defendant. Prange was not actively negligent. Therefore notice of the unsafe condition would still have to be shown.

Appellants then object to the following instructions given by the trial judge:

"Furthermore, before you can find the defendant H. C. Prange Company negligent in answer to this Question 1, you must also find that the defendant H. C. Prange Company had knowledge of the hazard, if, as a matter of fact, such hazard existed. You are instructed that in order to charge the defendant H. C. Prange Company with knowledge of any unsafe condition existing at the place of employment or public building in question, such unsafe condition must be shown to have existed for so long a time that the defendant H. C. Prange Company had an opportunity not only to discover it but to remedy the situation and avoid the accident. If you find from the evidence that an unsafe condition existed for such length of time that the defendant, H. C. Prange Company, by the use of ordinary care, could have become aware of its existence and remedied the situation prior to the time the plaintiff sustained her injury, then the defendant H. C. Prange Company is charged with such knowledge."

The appellants contend that the trial judge was in error in giving this instruction because it makes actual knowledge on the part of the defendant a condition precedent for finding a violation. The appellants claim that the instruction did not take into consideration "constructive knowledge." There is no doubt that constructive knowledge on the part of the defendant is sufficient to find a violation under the safe-place statute. *Williams v. International Oil Co.* (1954), 267 Wis. 227, 64 N. W. (2d) 817; *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 101 N. W. (2d) 645; *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. (2d) 71, 85 N. W. (2d) 772. From a reading of the instruction, it is clear that the trial judge was in fact including constructive knowledge even though he did not use those words. In *Uhrman v. Cutler-Hammer, Inc., supra,* at page 75, the court said:

"We say a person has constructive notice of something when for the promotion of sound policy or purpose he is to be treated as if he had actual notice, whether or not he had it in fact."

The last sentence of the trial court's instruction provided:

"If you find from the evidence that an unsafe condition existed for such a length of time that the defendant, H. C. Prange Company, by the use of ordinary care, could have become aware of its existence and remedied the situation prior to the time the plaintiff sustained her injury, then the defendant, H. C. Prange Company is charged with such knowledge."

This is synonymous with the meaning of constructive knowledge. Therefore, the instruction was not prejudicial to the appellants.

4. *Mrs. Turk's contributory negligence.* The fourth issue on this appeal is whether there was credible evidence to support the jury's finding that Mrs. Turk was contributorily negligent.

Since a new trial is to be ordered on other grounds, this question becomes moot and no further consideration need be given it on this appeal.

5. *Nonsuit of Prange cross complaint against Otis.* A fifth, and final, issue on this appeal is whether the lower court was in error in granting Otis' motion to nonsuit Prange on its cross complaint against Otis.

On this issue we must first state our reasons for concluding that Prange has proper standing here to obtain a review of the merits of the trial court's determination. The appellants appealed from the whole judgment on May 1, 1961, and notice thereof was duly served on both Prange and Otis. This conferred personal jurisdiction upon the supreme court. *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 229, 33 N. W. (2d) 134.

Prange then served a "notice of review" on May 12, 1961, on both Otis and Turk asking the court to "review" that part of the lower court's judgment that dismissed the cross complaint of Prange against Otis. This notice of review was expressly filed pursuant to sec. 274.12, Stats. 1959 (mentioning no subsection thereof although there are six).[3]

Otis filed a motion to dismiss this "notice of review" on the grounds that Prange should have cross-appealed and having failed so to do, Prange may not get a review here on the merits of the lower court's decision to nonsuit Prange.

Technically, Prange should have cross-appealed against Otis and labeled its notice of review a "notice of appeal."

---

[3] "274.12 ALL PARTIES BOUND BY APPEAL; ADDITIONAL PARTIES; REVIEW ON BEHALF OF RESPONDENT. (1) A respondent adverse to the appellant upon the latter's appeal may have a review of any rulings prejudicial to him by serving upon the appellant at any time before the case is set for hearing in the supreme court a notice stating in what respect he asks for a reversal or modification of the judgment or order or portion thereof appealed from.

"(2) A respondent may without serving the notice of review mentioned in sub. (1) have a review of any error, the correction of which would merely support the judgment or order appealed from.

"(3) If a respondent who is not adverse to the appellant on his appeal fails to appeal within thirty days after service upon him of notice of appeal or within the extended time therefor allowed by the trial court for cause shown and within the time allowed for appeal by the statute, he thereby waives his right of appeal.

"(4) When any respondent desires to review an order, judgment or portion thereof not appealed from, he shall within thirty days after service on him of notice of appeal take and perfect his appeal or be deemed to have waived his right so to appeal.

"(5) If a party required by sub. (3) or (4) to take an appeal to save his rights does appeal, he shall be subject in all respects to the same requirements that he would be if he were the original appellant and the rights of those served with his notice of appeal, to review rulings of the trial court by which they consider themselves aggrieved, shall be determined as though he were the original appellant.

"(6) The supreme court may order additional parties brought in upon their application or on that of any party to the appeal."

This would have been done pursuant to subs. (3) or (4), sec. 274.12, Stats., since Prange is a respondent and since it seeks to review the trial court's decision affecting another respondent, Otis, and on which decision the appellants, the Turks, are not an adverse party.

Because the supreme court has personal jurisdiction over Otis, because Prange gave abundant notice to Otis of its desire to review that part of the judgment granting the non-suit as to Otis, and because this court is interested in orderly procedure under which the settlement of an entire controversy can be accomplished in one appeal, the court has determined that Otis should be considered an additional party to the appeal under sec. 274.12 (6), Stats.,[4] and the merits of the lower court's ruling on the Otis motion of nonsuit are properly before us.

On the merits of the trial court's decision in favor of non-suiting Prange as against Otis, the issue is whether or not there was a jury question on the alleged negligence of Otis as contributing to plaintiff's injuries. Prange, in its cross complaint, has alleged that if the escalator was deemed defective it is because Otis was negligent in failing to "properly construct, design, examine, adjust, repair, and maintain" the escalator, or because Otis had failed to perform the provisions of the contract that Otis entered into with Prange on March 4, 1959, under which Otis agreed to "furnish and maintain" the escalator.

In the alternative, Prange sought contribution in the event it was determined that both Prange and Otis were joint tort-feasors.

In granting the Otis motion for a nonsuit of Prange's cross complaint against Otis the trial court stated:

---

[4] See *Benton v. Institute of Posturology* (1943), 243 Wis. 514, 11 N. W. (2d) 133, and *American Wrecking Co. v. McManus* (1921), 174 Wis. 300, 181 N. W. 235.

"In the court's opinion, the doctrine of *res ipsa loquitur* does not apply to Otis Elevator Company in this case. It is clear that it did not have exclusive control of the elevator [escalator] in question. There is testimony in this case by Mr. Rasmussen that unless the comb and tread were out of adjustment, or were not adjusted in conformity with the code, the boot of the boy could not have been caught. In the court's opinion, this creates a permissible inference of negligence on the part of the Prange Company, but does not carry over to the Otis Elevator Company. The further testimony of Mr. Rasmussen that Mr. Neal, the inspector for the Otis Elevator Company, failed to inspect the rollers is not proof that the rollers caused the misadjustment of the comb and tread, if in fact, such misadjustment actually existed, and such testimony does not establish negligence of the Otis Elevator Company. There being no negligence on the part of the Otis Elevator Company, the motion must be granted. In addition, the contract of the Otis Elevator Company contains this provision:

" 'It is agreed that we do not assume possession or management of any part of the equipment but such remains yours exclusively as the owner (or lessee) thereof. We shall not be liable for any loss, damage, or delay caused by acts of government, strikes, lockouts, fire, explosion, theft, floods, riot, civil commotion, war, malicious mischief, act of God, or by any cause beyond our reasonable control, and in any event we shall not be liable for consequential damages.'

"It is the court's opinion that the clause in the contract, even though negligence were found, would relieve the impleaded defendant from any liability to the defendant for contribution."

We agree that the doctrine of *res ipsa loquitur* has no application to the controversy between Prange and Otis. Otis did not have the right to possession or exclusive control of the escalator and thus one of the essential elements for application of the doctrine is missing.

Prange was obliged to sustain its burden of proof either as to specific acts of negligence on the part of Otis or its employees or on the breach of its escalator contract.

In reviewing the trial court's decision the sole question is whether or not there was a jury question raised.

Evidence previously detailed in this opinion and submitted on the trial as against Otis disclosed that the Otis inspector had examined the escalator one week before the accident and found it to be in adjustment; that immediately after the accident the same inspector, who was on the scene at the time, inspected the escalator and again found it in perfect adjustment. Other testimony indicated that the boy's galosh was caught in the center of the escalator and that it could not have been so caught without the escalator's being negligently out of adjustment. If the jury properly instructed found negligence against Prange, it could be on the basis of the galosh's being caught in the middle where the escalator would necessarily have to have been out of adjustment. If the escalator was out of adjustment the jury could at least infer that Otis was at fault, either in not making an inspection, in making a faulty inspection, or in failing to make a proper adjustment. This raised a jury question sufficient to force the trial court into denying the nonsuit motion.

Prange also contends that Otis breached its contract in failing to furnish and maintain a safe escalator. On the facts detailed above, the jury could have inferred that Otis had breached its contract.

These factors compel the conclusion that on a new trial Prange should be allowed to assert its cross complaint against Otis.

The portion of the contract quoted by the trial judge and as cited by us above does not excuse Otis. First, it does not list negligence as one of the causes of loss that Otis will not be liable for. Second, Otis disclaims liability for "consequential damages" only and not "direct damages." This provision is not a hold-harmless agreement on the part of Prange.

*By the Court.*—Otis motion to dismiss Prange notice of review denied. Judgment reversed, and cause remanded for new trial both as to complaint of the Turks against Prange, and as to the cross complaint of Prange against Otis.

CURRIE, J., took no part.